IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

FIRST PENTECOSTAL CHURCH OF HOLLY
SPRINGS                                                                    PLAINTIFF

V.                                                                CASE NO. 3:20CV119 M-P

CITY OF HOLLY SPRINGS MISSISSIPPI                                 DEFENDANT

**ORDER**

On Friday, April 24, 2020, plaintiff First Pentecostal Church of Holly Springs filed the instant motion seeking a Temporary Restraining Order permitting it to go forward with its planned church services on Sunday, April 27, 2020. Due to time constraints, this court has had only a few hours to review and research plaintiff's motion, and less than an hour after it conducted a telephonic hearing at 4 p.m. on Friday to issue this order. This court believes that, at the telephonic hearing, the City of Holly Springs made certain concessions, and promised to amend its Covid-19 ordinance in such a manner, as to likely resolve the dispute in this litigation. Nevertheless, this court will enter this order setting forth its thoughts on this manner, for the purpose of this case and others which may come before it.

After reviewing the TRO motion, it seems clear that it presents a considerably weaker case for a violation of a church's First Amendment rights than in a similar case before it. This court believes that these two cases present a useful comparator for each other, and it will therefore contrast them in this order. In *King James Bible Baptist Church v. Greenville*, 4:20cv65, this court was faced with a lawsuit challenging a Greenville ordinance, since repealed, which specifically singled out church meetings for harsher Covid-19 enforcement measures, even in cases where the churches sought to hold services in their parking lots, with members

1

observing from vehicles with closed windows. The unreasonable (and likely unconstitutional) nature of this original order was tacitly acknowledged by the City of Greenville, which has since replaced it with one which specifically allows drive-in services, so long as the vehicles' windows are raised.[1]

From reviewing the pleadings in this case, this court's impression is that it involves a rather inartfully drafted Holly Springs ordinance, but it appears that the actual enforcement of that ordinance has been considerably more reasonable than in the Greenville case. In so stating, the Church emphasizes that, by the Church's own admission, the City only took enforcement action against it after plaintiff held an indoors service involving dozens of congregants. Specifically, the Church writes in its brief in support of a TRO that:

> On Sunday, April 5, 2020, in response to the COVID-19 pandemic, First Pentecostal held services outdoors. Its members practiced social distancing at all times. (*Id*., ¶ 14). On Easter Sunday, April 12, 2020, the church again planned to hold services outdoors, but due to inclement weather was forced to move them indoors. Again, the church practiced social distancing at all times. The service was disrupted by Holly Springs police officers ordering the congregants to disperse and go home. The officers cited Pastor Jerry Waldrop for violating the local Holly Springs Stay Home Order. (*Id*., ¶ 15). Then on Wednesday, April 22, 2020, the church was conducting its mid-week Bible Study, once again practicing social distancing, when three Holly Springs police officers barged in and ordered the 35 congregants in attendance to go home under threat of criminal citation. (*Id*., ¶ 16).

[Brief at 2].

For reasons which should be obvious, this court is considerably less sympathetic to claims by a church which sought to hold indoor church services involving at least thirty-five congregants than it is to the claims by the church in the Greenville case, which sought to hold services in which the congregants stayed in their vehicles with the windows closed. In so stating,

---

[1] The plaintiff in *King James* voluntarily dismissed the action as moot after the repeal of the earlier ordinance.

this court takes judicial notice of the fact that, in South Korea, a nationwide outbreak of the Covid-19 virus was traced to religious services held by one specific church. *See* "How a South Korean church helped fuel the spread of the coronavirus," The Washington Post, March 25, 2020.[2] This fact illustrates that, while particular church members may decide that meeting their spiritual needs warrant accepting the risk of attending religious services, it is a very different matter for them to argue that members of the public should accept risks to their own lives, and those of their family members, arising from others' exercise of their religion.

In its brief, the Church describes how, after Holly Springs police ordered the church service to disperse, "the pastor and several congregants drove directly to the Walmart store, where the police watched as they went in and mingled among the dozens and dozens of customers in the store." [Id.] Thus, the apparent motivation for this grocery store visit was not a genuine need for groceries, but rather to demonstrate that the City was selectively enforcing its prohibition against gatherings. While this visit (which some might characterize as a stunt) may have made a valid point in this litigation, this court cannot help but wonder whether the Church in this case adequately appreciates the fact that this case is not just about itself and its own rights, but the rights of the members of the public and their families to stay alive. In its brief, the Church insists that its members practice "social distancing" during indoor church services, but this strikes this court as being a rather hollow guarantee, given the inherent difficulties involved in policing meetings behind closed doors and the inherent medical uncertainties with regard to what a safe Covid-19 distance actually is in the context of individuals who may be sitting together in the same room for an hour or more. Obviously, grocery store shoppers generally do

---

[2] https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/

not subject themselves to a comparable degree of exposure, and this court therefore does not regard the grocery store analogy which plaintiff seeks to make as being a particular apt one.

At the same time, this court readily acknowledges that the First Amendment guarantee of the Free Exercise of religion is one of the most important ones set forth in the Bill of Rights, and, without question, it grants the Church in this case the right to assert certain rights which, say, a barber shop would have no right to assert. That being the case, this court agrees with the Church that the City of Holly Springs made a rather poor decision to draft an ordinance which simply grouped "churches" together with other "non-essential" businesses such as "barber shops," "restaurants" and "liquor stores," among others, with rather unclear guidance for their lawful operation.

Plaintiff notes that, under the Holly Springs order, non-essential businesses are generally deemed closed, but they are still permitted to offer drive-through or curbside service but otherwise are prohibited from holding "any gathering in any facility within the City limits of Holly Springs." In its brief, the Church argues that, taken to its logical extreme, Holly Springs' prohibition on "gatherings" might even prohibit minimal operations of a church. Specifically, plaintiff argues that:

> Nonessential businesses are still permitted to use drive-through windows or curbside service – but apparently must offer their services using only one employee at a time, lest they violate the no-gathering-of-people rule. And First Pentecostal's pastor and his wife are prohibited under the Order even from entering the pastor's office together to make phone calls to the church's parishioners.

[Brief at 3].

This court agrees with the Church that Holly Springs' vague prohibition of "any gathering" is, in theory at least, problematic, but at the same time, plaintiff offers no proof that the City has actually sought to enforce the ordinance in a way approaching the extreme manner it

4

describes. To the contrary, counsel for the City appeared to specifically concede that the ordinance as drafted was overbroad and would be improved upon. This court looks forward to considering this revised ordinance, which will hopefully resolve this lawsuit. This court notes that municipalities throughout this state have been forced to draft ordinances to deal with a pandemic emergency which is nearly without precedent, and it is quite unsurprising that some have done a better job in this regard than others.

In considering this case and the Greenville case, it has become apparent to this court that it is necessary to establish some practical guidelines regarding what First Amendment rights it believes a church and its members have a right to assert in the unprecedented context of the Covid-19 pandemic. This court concludes that establishing practical guidelines for enforcement in this regard constitutes a preferable approach to attempting to judicially re-write the myriad municipal ordinances which have been adopted throughout this district. While this court may well choose to refine its position on this issue in future orders, the instant emergency TRO order requires it to act very quickly to establish guidelines for the upcoming church services on April 26, 2020. As to these upcoming services, this court notes that, in its brief, the Church writes that:

> Plaintiff's pleas to the City to allow at least a drive-in service this coming Sunday, April 26, have gone unheeded. Plaintiff therefore needs emergency relief in order to conduct its church service, just as local retail stores such as Walmart and Dollar Tree are allowed to conduct business and have a number of people gathered in one place.

[Brief at 2]. This court regards plaintiff's request for the City "to allow at least a drive-in service this coming Sunday" as being a quite reasonable one, even though it appears to represent a retreat of sorts from the indoor church services which the Church previously held.

At any rate, plaintiff's request strikes this court as representing a reasonable compromise, and it would be prepared to accommodate it with a TRO order, if such were necessary. In the

5

court's view, allowing drive-in church services involving congregants sitting in vehicles whose windows are closed represents the practical middle ground upon which concerns about religious freedom and the safety of the community may co-exist. Indeed, this is the same middle ground which the City of Greenville (belatedly) realized was appropriate, and this court is hopeful that other municipalities and churches in this district can come to the same reasonable understanding.

At the same time, this court wishes to be clear that it does not regard the practice of "drive-in" church services as being risk-free. While it may be imagined that many attendees of such services would be family members who have already been exposed to each other, that will not always be the case. Indeed, it seems quite likely that, as with regular church services, many such attendees will be elderly parishioners who require the assistance of friends or non-resident family members to take them to the service. It is well known that the Covid-19 virus disproportionately kills elderly individuals, and it may therefore be assumed that, if the holding of such "drive-in" services becomes a nationwide trend, that a significant (and possibly large) number of deaths will result. This court believes that preachers and parishioners would be well advised to take this into consideration when deciding whether or not to hold or attend such services.

While this court therefore does not regard the public policy considerations in this context as being one-sided, the First Amendment right to Free Exercise of religion is sufficiently important that some reasonable accommodations must be made for it. This court concludes that the allowing of drive-in services, with windows closed or slightly cracked open,[3] represents a reasonable accommodation in this context, and it finds a reasonable likelihood under applicable

---

[3] This court believes that, in this context, it would be reasonable to allow the windows of vehicles to be slightly cracked open if such is necessary for the congregants to hear the sermon.

TRO standards that plaintiff would be able to establish that allowing such drive-in services is legally required, under either state or federal law. This court notes, however, that, while plaintiff has offered to conduct drive-in services, it was only subjected to the Holly Springs' enforcement measures after it went much further and conducted indoor services involving dozens of congregants.

At the telephonic hearing, counsel for the City of Holly Springs appeared to clarify the City's position by specifically representing that the City would not seek to prohibit drive-in church services. Indeed, counsel noted that the City has allowed another church to conduct similar services. Once again, counsel further promised to modify the City's ordinance to specifically allow such services. It is unclear to this court whether the modifications to the ordinance will be sufficient to resolve this lawsuit, but it believes that they will be. At any rate, this court does not believe that a TRO order is required in order to allow the drive-in church services to go forward, and it will therefore simply issue this order setting forth its understanding regarding the results of the telephonic hearing. This court directs that the City provide it with a copy of the revised ordinance once it has been issued, and plaintiff may then notify this court whether it wishes to continue to pursue this lawsuit in light of the modifications.

So ordered, this the 24th day of April, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**