IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

FIRST PENTECOSTAL CHURCH OF HOLLY SPRINGS          PLAINTIFF

V.          CASE NO. 3:20CV119 M-P

CITY OF HOLLY SPRINGS MISSISSIPPI          DEFENDANT

**ORDER**

    Following this court's April 24, 2020 order, the City of Holly Springs moved expeditiously to amend its ordinance to allow the very sort of drive-in services which plaintiff itself indicated in its TRO motion were acceptable. (See Plaintiff's brief at 2, stating "plaintiff's pleas to the City to allow at least a drive-in service this coming Sunday, April 26, have gone unheeded.") This court hoped (and expected) that the City's actions would resolve this matter, much like a comparable action by the City of Greenville resolved a very similar case which this court discussed in its prior order. *See King James Bible Baptist Church v. Greenville*, No. 4:20cv65 (N.D. Miss. 2020). In *King James*, the plaintiff church voluntarily dismissed its lawsuit after the City of Greenville reversed its prior position and allowed it to conduct drive-in church services. *Id.* In this case, by contrast, plaintiff seems determined to push the legal envelope even further, in the form of holding indoor church services which, as discussed below, both state and local officials have very strongly discouraged.

    In dealing with the issues in this case, this court must distinguish between what plaintiff and its members *should* do and what they *have a right* to do. The Mississippi State Department of Health ("MSDH") has stated, in no uncertain terms, what it believes churches *should* do during the COVID-19 pandemic, namely:

1

> **Church services, funerals and weddings:** Because MSDH has identified COVID-19 cases specifically linked to church gatherings, it is vitally important that all Mississippians not attend in-person church services at any church or other type of facility. Attending churches, weddings and funerals is not recommended and is leading to COVID-19 transmission to others. Limiting gatherings to 10 people or fewer is critical, and social distancing must be practiced at all gatherings.[1]

Thus, the MSDH has all but begged residents not to hold indoor church services, but it appears to have stopped short of legally prohibiting such services.

In the court's view, urgent requests on the part of both state and local agencies that churches not hold indoor services would ideally be more than sufficient for any entity whose guiding principle is, supposedly, the Golden Rule. This court wonders: do plaintiffs imagine that they know better that the Mississippi State Department of Health, so as to disregard its admonition that "it is vitally important that all Mississippians not attend in-person church services"? Is avoiding the inconveniences associated with drive-in church services worth risking the very lives of their fellow congregants and other members of the community? Unfortunately, plaintiff and its members appear to have decided that the answer to this question is "yes" and, as a result, this court must set aside the question of what it believes that they *should* do, and turn to the question of what they have a *right* to do.

While this court believes that plaintiff is proceeding irresponsibly in this case, it does appear to be correct that 1) the Governor of Mississippi has taken upon himself the responsibility of setting standards regarding the operation of churches during the COVID-19 pandemic, and 2) these standards do appear to pre-empt those issued by the City of Holly Springs and other municipalities in this state. As noted by plaintiff in its TRO brief, Governor Tate Reeve's Executive Order 1463, as supplemented, specifically lists churches as being (at least potentially) "essential businesses or operations," and it provides that:

---

[1] See https://msdh.ms.gov/msdhsite/_static/14,21866,420.html

>any order, rule, regulation or action by any governing body, agency, or political subdivision of the state that imposes any additional freedom of movement or social distancing limitations on Essential Business or Operation, restricts scope of services or hours of operation of any Essential Business of Operation, or which will or might in any way conflict with or impede the purpose of this Executive Order is suspended and unenforceable during this COVID-19 state of emergency.

[Plaintiff's exhibit 3 at 3].

It is difficult to read this provision as anything other than one pre-empting local governments from enacting their own restrictions on church activities during the pandemic, and the City has not (at least to date) argued otherwise. However, plaintiff's brief makes reference to a more recent executive order which arguably imposes a lesser degree of preemption. Specifically, plaintiff writes that:

>Moreover, Executive Order 1466 specifically limits the authority of local jurisdictions to "impose restrictions that prevent any Essential Business or Operation as identified in Executive Order No. 1463 . . . from operating at such level necessary to provide essential services and functions."

[Plaintiff's brief at 8]. This court is unclear regarding the exact nature of the pre-emption arising from this provision, and it has generally had considerable difficulty in ascertaining what is and is not permitted under Governor Reeves' executive orders, as it relates to church services.

This court frankly believes that statewide standards are necessary in this context, since it has personally experienced the legal confusion resulting when various municipalities attempt to craft a patchwork of ordinances on this issue, which often seem to change on a weekly basis. This court therefore regards the Governor's decision to issue statewide standards on this issue as helpful. Nevertheless, interpreting the exact nature of those standards has posed considerable difficulties, and this court doubts that churches and municipalities in this state have had an easier time in this regard. This court notes that Executive Order 1463 comes with a very important condition, namely that:

> 3. For the purposes of this executive order, the phrase "essential business or operation means" … Religious entities including religious and faith-based facilities, entities and groups, religious gatherings provided they adhere to the CDC and the Mississippi Department of Health recommendations and guidance to prevent the spread of Covid-19.

[Id. at 5].

Thus, Governor Reeves has not granted "religious entities" a blanket status as "essential business[es] or operation[s]," but has instead conditioned that status upon their adhering to the "CDC and the Mississippi Department of Health recommendations and guidance to prevent the spread of Covid-19." It is this provision which this court regards as presenting the most difficult issue in this case. This court can discern an argument that, by requiring that churches "adhere" to the MSDH's recommendations, Governor Reeves implicitly made mandatory that agency's recommendation that in-person church services not be held. It is unclear to this court whether this was the Governor's intent; it may be that he had social distancing and occupancy limitations in mind when he issued the order. This court is by no means certain on this point, however, and it has contacted the Governor's legal staff to request that he submit an *amicus* brief setting forth his position on this issue.

In the event that Governor Reeves clarifies that a complete ban on indoor church services exists in light of current MSDH recommendations, then it appears that a long shadow will be cast on that ban by a recent federal appellate court decision. In *Roberts et al. v. Neace et al*, 2020 WL 2316679, at *2–3 (6th Cir. May 9, 2020), a Sixth Circuit panel very recently struck down an order by the Governor of Kentucky which sought to bar large gatherings, which included church services. However, the panel appeared to find that the Governor could legally bar church services which were being carried out in an unsafe manner, writing that:

> Keep in mind that the Church and its congregants just want to be treated equally. They don't seek to insulate themselves from the Commonwealth's general public health guidelines. They simply wish to incorporate them into their worship services. They are

4

> willing to practice social distancing. They are willing to follow any hygiene requirements. They do not ask to share a chalice. The Governor has offered no good reason for refusing to trust the congregants who promise to use care in worship in just the same way it trusts accountants, lawyers, and laundromat workers to do the same.

*Roberts*, 2020 WL 2316679, at *3. As discussed below, this court has serious reservations about whether, in writing these words, the Sixth Circuit adequately appreciated the unique dangers arising from the typical church service, compared to the professions it mentioned. Nevertheless, *Roberts* clearly represents significant authority in this context, and this court will be cognizant of it in dealing with these issues.

This court notes at this juncture that there appears to be very little daylight between Governor Reeves' order and Holly Springs' revised ordinance. Specifically, the revised Holly Springs ordinance provides that:

> Religious entities, including religious and faith-based facilities, groups, religious gatherings such as funerals and/or burial, shall adhere to the Center for Disease Control and Protection and the Mississippi State Department of Health recommendations and guidance to prevent the spread of COVID-19. In order to protect the First Amendment right to free exercise of religion these entities are encouraged to conduct online or virtual services or shall conduct "drive-in" services in the parking lot and remain in the vehicle with windows closed or slightly cracked open.

[Holly Springs Executive Order 5 at 3]. Thus, both Reeves' order and Holly Springs' revised ordinance incorporate by reference the "recommendations and guidance" of the MSDH and the CDC, and the primary difference is that the Holly Springs ordinance, consistent with this court's prior order, additionally authorizes drive-in services to accommodate the U.S. Constitution's guarantee of Free Exercise of religion.[2] This court suspects that plaintiff's strong preference for Reeves' order arises largely from the fact that the Governor has been publicly supportive of

---

[2] This court notes that other federal courts have similarly held such "drive in" services to be constitutionally required, and this seems to be an issue regarding which there is broad agreement among federal courts. *See Cassell v. Snyders*, 2020 WL 2112374, at *6 (N.D. Ill. May 3, 2020); *Legacy Church, Inc. v. Kunkel*, 2020 WL 1905586, at *35 (D.N.M. Apr. 17, 2020).

5

churches' rights to hold religious services during the pandemic,[3] but, regardless, the objective language in the two provisions is virtually identical.

Given the very similar nature of the state and municipal executive orders in this case, this court must wonder why Holly Springs (and any other municipality seeking to reduce its legal exposure) does not simply choose to directly adopt the Governor's executive orders relating to church services, while additionally protecting the right to conduct drive-in services arising from the prior litigation in this case. Considering that plaintiff has embraced the Governor's executive orders, while assailing the virtually identical language in the City's ordinance, adopting the Governor's standards would (presumably) remove any argument that the relevant standards were crafted out of a nefarious scheme to discriminate against the free exercise of religion.

This court has found the City to be quite accommodating of the free exercise of religion in this case, including by quickly amending its ordinance to expressly grant plaintiff the right to conduct the drive-in services which it previously requested. Nevertheless, plaintiff appears to regard the Governor, but not the City, as a friend of the exercise of religion, and, that being the case, this court can discern little point in the City choosing to increase its legal exposure by adopting its own executive orders relating to church services, when they are so similar to the Governor's. The City's choice of whether or not to adopt the Governor's orders will be moot if it is determined that the Governor's orders pre-empt the City's, but this court raises this as one potential step to bridge the gap of mistrust which clearly exists between the parties in this case.

Plaintiff's evident disdain for City officials strikes this court as often being internally inconsistent, such as with its criticism of city ordinances for treating churches differently than

---

[3] This court takes judicial notice of the fact that these statements were made in the context of *drive-in* church services, and it is unaware of the Governor's position regarding indoor church services.

6

essential businesses while failing to acknowledge that Reeves' executive orders do likewise. For example, Governor Reeves' EO 1463, which plaintiff embraces, conditions churches' status as "essential" upon their complying with relevant health guidelines, even though it does not subject a long list of other businesses to this requirement. [EO 1463 at 2-4].

This court has no doubt that the Governor's distinction in this regard arises not from any animus towards religion, but, rather, out of a recognition that church services involving large numbers of often elderly and vulnerable individuals sitting and singing hymns in the same room for an hour or more pose health risks in the COVID-19 context which simply do not exist in other businesses which plaintiff has raised as comparators in this case.[4] To ignore this fact would, in this court's view, represent highly irresponsible governance which would very likely result in citizens losing their lives. Once again, the MSDH has likewise singled out religious services for special warnings, but, for some reason, plaintiff only appears to take offense when the City of Holly Springs acknowledges the unique dangers in this context and legislates accordingly.[5]

As noted previously, this court believes that a failure to recognize the unique risks of church services is a logical weakness in the Sixth Circuit's opinion in *Roberts*. As quoted previously, the Sixth Circuit observed in that decision that Kentucky law trusted citizens to practice social distancing in their work as lawyers or accountants, *id.,* but it should be clear that the simple act of a congregation singing a hymn gives rise to risks which do not exist in any law

---

[4] Plaintiff's insistence that it be treated like an essential "business" strikes this court as inappropriate, since churches clearly occupy their own unique place in the community. This court notes that, among other distinguishing factors, churches pay no taxes like traditional businesses do.

[5] This court wonders whether, consistent with its prior shifting positions in this case, plaintiff will eventually turn on the Governor's executive orders which it now embraces, if those orders are held to set forth the governing standards in this case.

or accounting firm. This concern is not merely speculative: this court takes judicial notice of the fact that, in Washington State, CDC investigators traced 53 COVID-19 cases, and two deaths, to a single choir practice.[6] It stands to reason that the risk would be even greater if an entire church congregation were singing together, and, in its brief, plaintiff specifically cites its members' inability to sing together as a weakness of the current drive-in arrangement. [Brief at 4].

Plaintiffs' briefing on this issue heightens this court's impression that this entire lawsuit is nothing more than a deeply misguided attempt on their part to gain permission to endanger their own lives and those of their fellow community members. While this court does not rule out the possibility that indoor church services could be held at acceptable risk by a responsible church if sufficient precautions were taken, it has grave concerns whether the plaintiff in this case is sufficiently aware of the gravity of these matters to enable it to do so. The Fifth Circuit has stated that the four elements a plaintiff must establish to secure a preliminary injunction are: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

Thus, the preliminary injunction standard does not simply inquire into this court's analysis of abstract legal issues, and the likelihood of success on those issues. Rather, the standard affords this court considerable discretion, based on the particular case before it, to determine whether an injunction is in the public interest. These concerns weigh particularly

---

[6] https://www.businessinsider.com/coronavirus-cdc-says-washington-choir-session-53-cases-2-deaths-2020-5

heavy in a time such as this one, when an incorrect decision granting plaintiff the right to hold indoor services could literally cost Holly Springs residents their lives.

In this vein, this court has serious concerns that plaintiff has been proceeding in an excessively reckless and cavalier manner and with insufficient respect for the enormity of the health crisis which the COVID-19 pandemic presents. In so stating, this court notes that it has observed a youtube video which depicts plaintiff's members staging a mass visit to Wal-mart weeks ago (referenced by plaintiff in its complaint), merely to make a point in their dispute with the City.[7] Indeed, a church member can be heard stating near the end of the video "we told them we were coming to Walmart to prove a point, and we proved our point." Thus, no pretense was given that the church members were actually shopping during the visit, and they apparently were comfortable in subjecting actual shoppers with potential exposure to a deadly virus merely to make a point in this litigation. The video concludes with plaintiff's pastor expressing his skepticism that the Coronavirus has actually been transmitted through churches, even though, as noted in this court's prior order, a nationwide outbreak in South Korea has been traced to a single church in that country. This court considers the visit depicted in the video to have been highly reckless in light of the ongoing pandemic, and it frankly suspects that plaintiff's members regard this controversy as a game of sorts and enjoy the publicity attendant to it. This court's suspicions on this point are strengthened by the manner in which plaintiff has sought to move the goalposts in this litigation after the City moved quickly to meet its initial request to hold drive-in services. This court is also troubled by plaintiff's evident lack of a plan to safely hold services, at least judging by its apparent intent to conduct "corporate singing" activities in church. [Brief at 4].

---

[7] https://www.youtube.com/watch?v=2E6nqW6q4vk

9

In light of the foregoing, plaintiff's burden in this case is not merely to convince this court that it is correct on abstract legal issues, but also that it is sufficiently trustworthy that granting the injunction it requests would serve the public interest. Simply stated, if this court believes that granting this particular plaintiff the injunction it seeks would unduly endanger the lives of Holly Springs residents, then it will not issue that injunction, regardless of its views on the broader legal issues in this case. At that point, plaintiff may seek a more receptive audience at the Fifth Circuit, if it so desires.

This court notes that, in its preliminary injunction motion filed on May 13, plaintiff seeks a ruling from this court before this upcoming weekend's services. However, this court has not even entertained briefing from the City at this time, and it has fourteen days under the local rules to submit that briefing. This court hopes that Governor Reeves will be able to submit *amicus* briefing within that time period, but it will not attempt to compel him to do so. This court observes that plaintiff has made a habit in this litigation of taking the time to carefully prepare briefs (its brief in support of its current motion is 26 pages long) and then demanding an immediate ruling from this court, with opposing counsel left to make hurried arguments in a telephonic hearing. This is a fundamentally unfair process, and this court will no longer tolerate it.

Plaintiff has already been granted the right to conduct drive-in church services which, once again, it previously stated represented an acceptable compromise for it in this case. Plaintiff is therefore in an exceedingly poor position to argue that this court must rule upon its preliminary injunction motion on a highly expedited basis. This court is more concerned with deciding these important matters correctly than with doing so immediately, and it is confident that plaintiff's members will suffer no undue harm by continuing to hold drive-in services

10

pending a ruling on the preliminary injunction motion. This court has determined, however, that some preliminary observations regarding this case would be helpful to assist the parties (and hopefully Governor Reeves) in their briefing, and it has sought to provide it in this order.

      As a final note, this court emphasizes that it has the highest regard for the free exercise of religion and great respect for all believers. At the same time, this court also respects science and the opinions of those who attempt to safeguard others through the sharing of public health knowledge. In these times, when a pandemic stalks the world, this court realizes that decisions regarding previously mundane matters may be deadly. It is therefore with the highest regard for the rights of all the players in this controversy that this court expresses its views today.

      This the 14th day of May, 2020.

      /s/ Michael P. Mills
      U.S. DISTRICT COURT